# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JONATHAN H. CORRELL,

               Plaintiff,

  -vs-                                     Case No. 6:08-cv-208-Orl-GJK

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____

## MEMORANDUM OF DECISION

      Plaintiff Jonathan H. Correll (the "Claimant") appeals to the district court from a final

decision of the Commissioner of Social Security (the "Commissioner") denying his application

for disability insurance benefits and supplemental security income payments ("SSI"). *See* Doc.

No. 1. For the reasons set forth below, it is ordered that the Commissioner's decision is

**REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g).**

## I.     <u>BACKGROUND</u>

      Claimant was born on September 4, 1956, and he completed high school and two years

of college. R. 66, 289. Claimant's past employment experience includes telemarketing,

installing cable modems, marketing for an internet company, and working as a manager for a

video game company. R. 88, 295-300. Claimant last worked for a brief period in May and June

of 2002 as a telemarketer in computer sales. R. 88. Claimant alleges an onset of disability as of

June 30, 2002. R. 66. On November 14, 2002, Claimant filed the present application for

disability benefits and SSI alleging disability due to bipolar disorder and chronic depression. R.

74. Claimant remained insured through March 31, 2003.  R. 18.[1]

On January 30, 2003, Claimant's application was denied initially and, on November 4, 2004, the application was denied again upon reconsideration.  R. 33-35, 42-44.  On December 22, 2003, Claimant requested a hearing before an Administrative Law Judge ("ALJ") and, on April 21, 2006, a hearing was held before the Honorable Richard Ouellette.  R. 46, 284-326.

At the hearing, Claimant was represented by Shea Fugate, Esq.  R. 284.  Claimant and Vocational Expert ("VE") Joyce Ryan testified at the hearing.  R. 284-326.  Claimant testified to the following in pertinent part:

- He is impaired and unable to work due to: anxiety and depression;

- Due to his depression, he was hospitalized twice in 2001 for suicide attempts;

- He began treating with Dr. Johnson, a psychiatrist, and Dr. Anthony, a psychologist in 2001 and remains in their respective care;

- His depression involves uncertainty about the future, racing thoughts, insomnia, lightheadedness, inability to focus, and lethargy;

- His interpersonal relationships have suffered due to his condition and he does not desire to have many friends;

- A friend brings him food, but he does not always eat regularly;

- He is currently taking Klonopin and Seroquel which result in the following side effects: lack of appetite; lightheadedness; and an inability to focus;

---

[1] In his decision finding no disability, the Administrative Law Judge states that Claimant's date last insured was March 31, 2003.  R. 18.  However, in the Commissioner's original denial of Claimant's application for disability, he states that Claimant's date last insured was December 31, 2002.  R. 35.  Whether Claimant's actual date last insured is December 31, 2002 or March 31, 2003, is not an issue on appeal.

- He usually sleeps until 2:00 or 3:00 p.m. everyday and goes to bed around 11:00 p.m., but he generally wakes up about a dozen times a night;

- He does not go out;

- He has abused alcohol in the past, but he is unaware that Dr. Johnson repeatedly recommended that he enroll in a detoxification program; and[2]

- He currently consumes alcohol, but he is not abusing it.

R. 294-318.[3]

The VE testified that Claimant's prior employment consisted of light skilled and sedentary skilled work.  R. 320. The ALJ's hypothetical question to the VE and her response are as follows:

> ALJ:  Lets assume an individual who has the same age, education and work experience as the claimant, has the following residual functional capacity.  Capable of sedentary work to light work with occasional limitation of concentrating on tasks assigned, coping with work stress and interacting with the public, but capable of performing fairly complex tasks, despite the lack of concentration on occasion, okay?  He also has, premised upon his testimony here today, a frequent limitation for climbing, an occasional limitation for bending, stooping, crouching and kneeling.  Are there any jobs?

---

[2] The record reflects Dr. Johnson did repeatedly recommend detoxification.  R. 159-60, 163-64, 166-67.

[3] Claimant appeared for the hearing on crutches.  R. 290.  Claimant testified that two years after the date last insured he was diagnosed with vascular necrosis and he underwent a core decompression procedure with a Dr. Saunders.  R. 292-93.  Claimant testified that the procedure did not work and the only other option was a total hip replacement.  R. 293.  The ALJ noted that he did not have any records from Dr. Saunders and agreed to hold the record open for Claimant to supplement the record.  R. 294, 316-17.  As noted by the ALJ in his decision, Claimant did not supplement the record regarding his vascular necrosis.  R. 21.  Claimant's vascular necrosis and the lack of records from Dr. Saunders are not issues in this appeal.

> VE: Your Honor, if I'm understanding your hypothetical, there's an occasional limitation in concentration, but can perform up to complex tasks . . . is that correct? Just examining the past relevant work, I believe the jobs performed would fall within your hypothetical would be as follows. The sales rep for advertising, which would be the - - working at the computer, organizing sales . . . on the internet, that one would fall within the hypothetical. I would remove the supervisory job of the computer operators. I believe basic computer operator would still fall within the hypothetical, and I believe the modem - - cable installer would fall with the hypothetical . . . just looking at the past relevant work.

R. 321-22. At the hearing, the ALJ noted that the consultative psychological examination had not yet occurred and the ALJ stated that he would hold the record open until such time as the examination occurred. R. 322-23. If necessary, the ALJ stated that he would send written interrogatories to the VE after the record was supplemented. R. 322.[4]

The ALJ noted that there were additional non-exertional limitations from a "State Agency physician, who happens to be a psychiatrist," which were not included in the ALJ's original hypothetical. R. 323. Thus, the ALJ offered the following second hypothetical question to the VE:

> ALJ: The doctors in these forms - - of course, assuming that we have the same individual that we've spoken about previously, with the same past relevant work, but they would have non-exertional limitations only, with a moderate ability to carry out detailed instructions, a

---

[4] After the hearing and after the ALJ received the consultative examination report, no further testimony was taken from the VE.

moderate ability to maintain attention and concentration, moderate ability to perform activities within a schedule, maintain regular attendance and be punctual, and a moderate ability to complete a normal work day and work week without interruptions from psychiatric based symptoms, and to perform at a consistent pace without an unreasonable number of length and rest periods. Additionally, a moderately limited ability to work in coordination with or proximity to others without being distracted by them, a moderately limited - - sorry - - moderately limited ability to accept instructions and respond appropriate to criticism from supervisors, and a moderately limited ability to respond appropriately to changes in the work setting. Additionally, this psychiatrist finds moderate difficulty maintaining social functioning, and moderate difficulty maintaining consistent - - I mean maintaining concentration, persistence or pace. I know that is a lot. You were writing diligently. Would that person be able to perform past relevant work?

VE:     Well, again, as you prefaced this by the definitions of these words, it is my understanding, according to the Social Security guidelines, that moderately - - there is a moderate limitation in this area, but the individual is still able to function satisfactorily, so if I go by that alone, I would have to say yes. Maybe not the best employee, but certainly not the worst employee. Does an adequate job, and, I guess, earns their paycheck. So, in looking at that - - and I know that there's also what we call the cumulative effect . . . I understand that also, but again, even if you look at it cumulatively, you have to say, well, again, you know, they can do the job. They're not going to probably be the best employee, or they're going to do the best job that's out there, but the job still can get done, and the job will get done, so in that respect, looking at the word moderately, I'd have to say they could - - the hypothetical person could perform the past relevant work, unless the definition's

changed.

R. 323-25. The ALJ also noted that Claimant's treating psychiatrist, Dr. Johnson, provided an opinion regarding Claimant's non-exertional limitations and the ALJ posed the following third hypothetical to the VE:

> ALJ: There was also a form . . . from Dr. Johnson that goes over significant - - or other non-exertional impairments. . . . [H]e indicates that this gentleman would have a severe impairment, and severe is defined as - - on the form is defined as extreme impairment of ability to function. He has several severes (sic), but I'll just go over a few of them. A severe impairment in his maintaining social functioning, in his deficiencies of concentration, persistence or pace, in his ability to use good judgment, achieve assigned goals and respond to time limits, perform work requiring regular contact with the public, relate appropriately to co-workers, relate to supervision, maintain appropriate behavior in work situations. Would that person be able to perform the past relevant work as described?
>
> VE: No.

R. 325-26.

On October 6, 2006, the ALJ issued an unfavorable opinion finding Claimant not disabled. R. 18-29(A). In his decision, the ALJ made the following pertinent findings:

1. Claimant met the disability insured status requirements of the Social Security Act through March 31, 2003;

2. Claimant has not engaged in substantial gainful activity since June 30, 2002;

3. Claimant suffers from the following severe impairments: bipolar disorder; vascular

necrosis and alcohol abuse;[5]

4. Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments;

5. After careful consideration of the entire record, the undersigned finds that Claimant has the residual functional capacity ("RFC") to perform sedentary to light work. He has the occasional limitation for concentrating on tasks assigned, coping with work stress and interacting with public, but he is capable of performing fairly complex tasks despite a lack of concentration on occasion. He has a frequent limitation for climbing and an occasional limitation for bending, stooping, crouching, and kneeling;

6. Claimant is capable of performing past relevant work as a sales representative for advertising; computer operator and cable modem installer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity; and

7. Claimant has not been under a "disability," as defined in the Social Security Act, from June 30, 2002 through the date of this decision.

R. 18-29(A). In the decision, the ALJ found Claimant's subjective testimony concerning the intensity, persistence and limiting effects of his symptoms "not entirely credible." R. 22, 27, 28.[6]

The ALJ specifically gave more weight to the treatment records and opinions of Dr. Johnson when compared to the treatment records and opinions of Dr. Anthony. R. 23-24. The ALJ stated the following regarding the treatment records and opinions of Drs. Johnson and Anthony:[7]

---

[5] In his decision, the ALJ notes that sleep apnea is also referenced in the record, but because Claimant was never treated for that condition there is not medical evidence to support a finding that the condition is severe. R. 20.

[6] The ALJ's credibility determination is not challenged by Claimant on appeal.

[7] Some of the quoted selections below from the ALJ's decision are not in sequential order.

Dr. Johnson, a psychiatrist, treated the claimant during his hospitalizations, and continued treatment after the claimant left the hospital. . . . The mental status report by Dr. Johnson described a labile affect and a depressed mood. The claimant was neatly dressed and well-groomed. He had good eye contact. His speech was logical, coherent, and goal-directed. Recent memory and remote memory were unimpaired. Psychomotor activity was normal and there was a negligible degree of conceptual disorganization. His thought content contained no significant preoccupations. Insight was adequate and judgment was good. He had an ability to attend and maintain focus, was reflective and able to resist urges. The diagnosis was bipolar and the assigned GAF score was 50.

The claimant [at the same time] also began psychotherapy with Dr. Anthony, a psychologist. The initial evaluation occurred on November 19, 2001 and findings included a well-groomed appearance, good eye contact, articulate speech with depressed mood but with intact association, blunted affect, intact memory, and good judgment. He had a logical stream of though, poor insight, a disrupted sleep pattern, low energy level, variable appetite, scattered concentration and conflicted relationships. The diagnosis was again bipolar disorder but the assigned GAF score was 55.

From the dates of the initial evaluation, the claimant saw both Drs. Johnson and Anthony through May 22, 2002. Dr. Johnson's positive findings remained essentially constant during this timeframe but Dr. Anthony described the claimant's mood as increasingly calmer, improved, positive and reasonable. However, in June of 2002, both doctors documented a negative change in mood due to child support payment issues. At which time the claimant's alcohol consumption increased.

By the end of August 2002, it appears that the claimant's condition returned to the level of severity which existed before his problems with child support payments. In August 2002, Dr. Johnson's mental status findings and GAF score were the same as they were

prior to June 2002. Also in August 2002, Dr. Anthony described the claimant's mood and energy as improved. Dr. Anthony also noted that the claimant's alcohol consumption had decreased.

Dr. Anthony noted that the claimant's symptoms escalated again in October 2002 through January 2003. However, Dr. Johnson's records do not echo that escalation of symptoms. Dr. Johnson's findings remain consistent throughout this timeframe. During this period, Dr. Anthony found that the claimant's judgment was poor and his condition was not under control. In comparison, Dr. Johnson described the claimant's judgment as good, and, despite continuing symptoms, never indicated that the claimant's condition was not under control. Dr. Johnson is a treating psychiatrist, who has been in contact with the claimant on a regular basis. His opinion of the claimant's mental status during this timeframe is more persuasive [than Dr. Anthony's opinion] given Dr. Johnson's specialty with mental health. Dr. Anthony is a psychologist and not a medical doctor. [Dr. Anthony's opinion], although very useful, is not given the same weight as that of Dr. Johnson.

As noted above, the claimant's [date last insured] is March 31, 2003. Dr. Anthony's last contact with the claimant occurred on January 10, 2003 before the [date last insured]. The claimant's bipolar disorder was not considered under control at that time. His energy level was low and affect blunted. According to Dr. Anthony, alcohol intake remained at a "problematic level." Again, this record is in conflict with the records of Dr. Johnson, whose mental status findings have been given more weight for the reasons indicated above.

R. 23-24. However, in his decision the ALJ does not prescribe a specific weight to the opinion of Dr. Johnson, except to say his treatment notes and opinions are afforded more weight than those of Dr. Anthony because Dr. Johnson is a treating psychiatrist. R. 23-28. Ultimately, the ALJ concludes that medical source opinion offered by Dr. Johnson is contrary to his treatment

records.  R. 26.[8]

Regarding the consultative psychological examination performed by Dr. Zsigmond, a psychologist, the ALJ states the following:

> On May 17, 2006, the claimant underwent a consultative psychological examination, at my request, with Dr. Zsigmond. This examination described no suicidal tendencies.  He had a blunted affect and appeared in no acute mental distress.  There was no severe short-term or long-term memory impairment suggested. Of import, Dr. Zsigmond administered the Minnesota Multiphasic Personality Inventory – 2 (MMPI-2) and indicated that the claimant's overall scale scores appeared to be inflated due to a tendency to over-endorse symptoms.  However, Dr. Zsigmond also indicated that the over endorsement appeared to be a cry for help and may be an attempt to elicit support.  The diagnosis was bipolar disorder with a GAF of 52. . . .

> In . . . the [consultative examination] I requested and completed by Dr. Claudia Zsigmond, the claimant is described with depression and necrosis of the hip.  But she noted no problems with "gait abnormalities or gross motor coordination."  MMPI-2 scores showed a tendency to "over endorse symptoms".  She diagnosed bipolar with a GAF of 52. . . .

> Dr. Claudia Zsigmond's (sic) observed . . . high F scores on the MMPI-2 indicating a "tendency to over endorse symptoms" which also impacts on the claimant's credibility.  As a result, the GAF . . . apparently is premised upon the claimant's subjective complaints which are of dubious value. . . .

> It should also be noted that the residual functional capacity presented to the vocational expert, confirms (sic) to the assessment of the [consultative examination].  In the form completed by Dr.

---

[8] In his brief, the Commissioner admits that the ALJ "did not specifically state the weight given to Dr. Johnson's opinions. . . ." Doc. No. 16 at 7.

Zsigmond, "moderate" is defined as "there is moderate limitation in this area but the individual is still able to function satisfactorily." Thus, Dr. Zsigmond indicated that the claimant could satisfactorily interact with supervisors and co-workers; respond appropriately to work pressures; and understand, remember and carryout detailed instructions. Similarly, if "slight" is defined as "there is a mild limitation in this area, but the individual can generally function well," Dr. Zsigmond has essentially indicated that the claimant is highly functional in regards to responding appropriately to changes in a routine work setting; making judgments on simple work-related decisions; and understanding, remembering and carrying out simple instructions. . . .

The medical evidence, including Dr. Zsigmond's examination, suggests that the claimant could perform fairly complex tasks.

R. 25, 27, 28, 29. In the decision, the ALJ did not state or describe the specific weight he prescribed to the opinion of Dr. Zsigmond. Moreover, the ALJ does not discuss the following findings of Dr. Zsigmond: 1) "His functional ability is poor"; 2) "[H]is ability to handle funds is inadequate due to his poorly managed depression"; 3) "He is unable to initiate and maintain friendships due to lack of interest"; and 4) "His prognosis is poor due to his poorly managed depression." R. 274-77. Moreover, the ALJ's statement that Dr. Zsigmond's findings conform to the ALJ's residual functional capacity finding is questionable because Dr. Zsigmond found that the claimant's poor concentration and avolition would impair his ability to remember and carry out detailed instructions. R. 278.

Regarding the non-examining state agency RFC opinions, the ALJ made the following finding:

The expert medical opinions of the state agency medical consultants have been found to be generally persuasive and consistent with the evidence of record. These opinions have been given significant (sic) but some adjustments have been made given additional evidence received at the hearing level.

R. 29 (emphasis added).

On December 21, 2006, Claimant requested review of the ALJ's decision before the Appeals Council. R. 15. On December 5, 2007, the Appeals Council denied review, stating that it "found no reason . . . to review the [ALJ's] decision." R. 5. On February 7, 2008, Claimant timely filed an appeal in the district court. Doc. No. 1. On December 8, 2008, Claimant filed a memorandum in support of his position on appeal. Doc. No. 15. On February 5, 2008, the Commissioner filed a memorandum in support of the Commissioner's final determination. Doc. No. 16. The appeal is now ripe for review.

## II. THE PARTIES' POSITIONS

Claimant assigns two errors to the Commissioner's decision: 1) the ALJ erred by not assigning and describing the specific weight given to the opinions and treatment notes of Dr. Johnson, and by failing to assign and describe the specific weight given to the opinions of the consulting examining psychologist, Dr. Zsigmond (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)); and 2) the ALJ erred by posing an improper hypothetical question to the VE because the non-exertional limitations set forth in the ALJ's hypothetical were comprised solely of the non-examining state agency consultants' opinions and ignored the opinions of Claimant's

treating and examining doctors. Doc. No. 15 at 9-16.

The Commissioner argues that substantial evidence supports his decision to deny Claimant's claims for disability benefits and SSI. He maintains that: 1) while the ALJ did not specifically state the weight given to Dr. Johnson's opinions, the ALJ did rely heavily on Dr. Johnson's treatment notes prior to the date Claimant was last insured, and the ALJ stated that Dr. Johnson's medical source opinion is contrary to "some of his exam/treatment notes"; (2) Dr. Zsigmond's opinion supports the ALJ's decision; and (3) the ALJ's hypothetical question was largely based on Dr. Johnson's early treatment notes. Doc. No. 16.

## III.   LEGAL STANDARDS

### A.   THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b). Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§

404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975.  If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses.

*Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his

ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must also consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience. In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

**B.      THE STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord*, *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner

has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089-92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord*, *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to

allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[9]  In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1) that there is new, non-cumulative evidence; 2) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090-92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).  A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant.  *Jackson*, 99 F.3d at 1095.[10]

---

[9] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

[10] With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact.  *Id*.  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  *Id*.

**IV.      Whether the ALJ Erred By Not Assigning Specific Weight to Opinions.**

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential process for determining disability.  The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining physician.  *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).  The ALJ may, however, reject any medical opinion if the evidence supports a contrary finding.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).  Nonetheless, the ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  Without the ALJ making stating the specific weight given to different medical opinions and the reasons therefore, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence.  *See e.g. Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).[11]  Absent good cause, the opinions of treating or examining physicians must be accorded substantial or considerable weight.  *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th

---

[11] The Regulations maintain that the administrative law judges "will always give good reasons in [their] . . . decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005). "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Johnson,* 138 Fed.Appx. at 269. Moreover, the opinions of a non-examining physician do not constitute substantial evidence when standing alone. *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

The ALJ specifically gave more weight to Dr. Johnson's opinions and treatment records than those of Dr. Anthony because Dr. Johnson is a medical doctor. R. 24. The ALJ then notes that Dr. Johnson's medical opinions are contrary to his treatment records. R. 26. However, the ALJ never states what weight, if any, he afforded to Dr. Johnson's opinions. The Commissioner has admitted that the ALJ did not specifically state the weight given to Dr. Johnson's opinions. *See* Doc. No. 16 at 7 ("While Plaintiff is correct that the ALJ did not specifically state the weight given to Dr. Johnson's opinions in Exhibit 12F (the interrogatory response that the ALJ found contrary to the doctor's earlier description of Plaintiff's condition), the ALJ made it clear, in his decision, that he relied heavily on Dr. Johnson's earlier treatment/exam notes."). The ALJ also failed to state the specific weight given to the examining consultant's opinions and failed to fully and accurately describe her report and opinions. *See* supra pp 10-11.

Given the apparent conflict between the ALJ's residual functional capacity determination and the Dr. Zsigmond's opinions regarding the Claimant's functional capacity, the ALJ's failure

to state the particular weight afforded to the opinions of Drs. Johnson and Zsigmond and the reasons therefore is significant because the only evidence remaining is that of the non-examining state agency consults. As set forth above, the opinions of non-examining physicians when standing alone do not constitute substantial evidence. *Spencer*, 765 F.2d at 1094. Thus, the ALJ's failure makes it difficult, if not impossible, to determine whether substantial evidence supports his decision. *Spencer*, 765 F.2d at 1094. While the ALJ's failure to specify the weight given to Dr. Johnson's opinions and the reasons therefore constitutes reversible error, the crucial reason for said reversal is not merely formulaic, but rather to insure that substantial evidence supports the ALJ's decision. *Sharfarz*, 825 F.2d at 279-80 and *MacGregor*, 786 F.2d at 1053.

## V.  CONCLUSION

For the reasons stated above, it is **ORDERED** that the Commissioner's decision is **REVERSED AND REMAND** pursuant to sentence four of Section 405(g). The Clerk is directed to enter a separate judgment in favor of the Claimant and close the case.[12]

**DONE and ORDERED** in Orlando, Florida on June 5, 2009.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

---

[12] Because the ALJ's decision must be reversed under *Sharfarz*, 825 F.2d at 279-80 and *MacGregor*, 786 F.2d at 1053, it is unnecessary for the Court to address the ALJ's hypothetical question to the VE.

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Shea Fugate
Law Offices of Shea Fugate
P.O. Box 940989
Maitland, Florida       32794

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida         33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920


The Honorable Richard E. Ouellette
Administrative Law Judge
c/o Social Security Administration
Office of Disability Adjudication and Review
The Times Bldg. #200
1000 N. Ashley Drive
Tampa, FL 33602